UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * * *

LPP Mortgage Ltd. f/k/a/ Loan Participant Partners, Ltd., as Assignee of the Small Business Administration,

Plaintiff,

vs.

KRAD, Inc.; Patricia A. Norman and David L. Norman; TCF National Bank, Minneapolis, Minnesota,

Defendants,

and

KRAD, Inc.; Patricia A. Norman and David L. Norman,

Third-Party Plaintiffs,

vs.

United States Small Business Administration,

Third-Party Defendant. Civ. No. 01-2014 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 20th day of February, 2003.

FEB 20 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. §636(c), upon the Motion of Third-Party Defendant, the United States Small Business Administration ("SBA"), to Dismiss or, alternatively, for Summary Judgment. At the time of the Hearing, the Third-Party Plaintiffs KRAD, Inc. ("KRAD"), Patricia A. Norman ("Patricia"), and David L. Norman ("David"), appeared by Kevin T. Duffy, Esq., and the SBA appeared by Perry F. Sekus, Assistant United States Attorney.[1] No appearance was made by, or on behalf of, the Plaintiff LPP Mortgage Ltd. ("LPP"), or the Defendants TCF National Bank, and Bremer Bank. For reasons which follow, we grant the SBA's Motion to Dismiss, and deny, as moot, its alternative Motion for Summary Judgment.[2]

---

[1]At the close of the Hearing, we asked the parties, who appeared, to submit simultaneously filed, additional briefs, concerning the assignment of the loan at issue. Following the submission of those briefs, the SBA's Motion was taken under advisement.

[2]Consistent with the consent of the parties, in ruling upon the pending dispositive Motions, we have considered the documents that the parties either have attached to their pleadings, or have appended to their Motion papers. Under the law of this Circuit, materials attached to a Complaint, as exhibits, may be considered in construing the sufficiency of the Complaint on a Motion to Dismiss. See, Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913 (8th Cir. 2002), citing Rule 10(c), Federal Rules of Civil Procedure ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."), and (continued...)

## II. Factual and Procedural History

This action arises out of a disaster relief loan, which was made by the SBA to KRAD, and its owners, Patricia and David Norman. The SBA is authorized to make direct loans to victims of declared natural disasters, in order to compensate those victims for uninsured losses to homes, and businesses. In making such loans, an applicant's credit history is highly material. On May 5, 1997, Patricia submitted an application for an SBA disaster relief loan on behalf of KRAD. At all times relevant to this action, Patricia was the President of KRAD, and owned 99.2 percent of the company's stock, while her husband, David, served as the company's secretary. David owned the remaining 0.8 percent of KRAD's stock. The SBA application required a disclosure of all outstanding Judgments, tax liens, or pending lawsuits against KRAD, and its owners. On the application, Patricia disclosed only the existence of a tax lien which was held by the North Dakota Tax Commission.

Due to the nature of the SBA disaster loan program, the SBA is required to "consider many loan applications submitted by many disaster victims in a short period of time," such that it "cannot always fully investigate the credit history of every disaster loan applicant and the title history of every piece of collateral pro-

---

[2](...continued)
Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

posed to support a disaster loan before approving or disbursing each loan." Exhibit A to Memorandum of Law in Support of Third-Party Defendant Small Business Administration's Motion to Dismiss or, in the Alternative, for Summary Judgment ("SBA Memorandum"), at p. 2. Accordingly, the SBA's standard disaster loan note, and the note executed by Patricia, David, and KRAD, contains the following clause:

> Holder is authorized to declare all or any part of indebtedness immediately due and payable upon the happening of any of the following events * * * (3) Holder's discovery of the undersigned's failure in any application of the undersigned to Holder or SBA to disclose any fact deemed by Holder to be material or the making therein or in any of said agreements, or in any affidavit or other documents submitted in connection with said application or the indebtedness, or any misrepresentation by, on behalf of, or for the benefit of the undersigned; * * *.

Id.

On July 7, 1997, the Loan Authorization and Agreement was executed, in which, the Third-Party Plaintiffs pledged, as collateral for the loan, two pieces of property -- one in East Grant Forks, Minnesota, and one in Grand Forks, North Dakota. Patricia and David also signed Affidavits of Real Property, in which they averred that those two pieces of property were subject only to first mortgages. The SBA approved a direct loan in the amount of $446,400.00, with

calculated monthly payments at a rate of four percent, such that $2,174.00, was owed on a monthly basis.

By October 16, 1997, after disbursing $250,000.00 of the loan, the SBA received the results of a title search on the property that had been pledged as collateral for the loan. The title search revealed several "undisclosed clouds" on the North Dakota property.[3]

---

[3]These "clouds" included the following:

> 7. Real estate taxes for calendar years 1993, 1994, 1995, 1996, which [we]re due and payable, and any installments of special assessments payable with those taxes. Taxes for 1993, 1994, 1995 and for the first half of 1996 and all installments of special assessment [were] delinquent.
>
> * * *
>
> 17. A Judgment against David L. Norman in favor of Federal Deposit Insurance Corporation, dated 2/20/92 and docketed 4/16/92 in the amount of $157,007.18.
>
> 18. A Judgment against David L. Norman in favor of Federal Deposit Insurance Corporation, dated 2/20/92 and docked 4/16/92 in the amount of $316,244.13.
>
> * * *
>
> 20. A Judgment against David Norman in favor of CSC Credit Services, Inc. dated and docketed 3/1/94 in the amount of $1,009.89.
>
> 21. A Judgment against K[RAD] Inc. and David L. Norman in favor of the State of North Dakota, dated and docketed 9/19/96 in the

(continued...)

Consequently, on November 17, 1997 the SBA advised the Third-Party Plaintiffs that the "[t]itle search of the collateral real estate reveal[ed] outstanding liens/judgments that have not been satisfied and could adversely affect [their] repayment ability" and, therefore, the undisbursed portion of the loan would be cancelled, thereby reducing the total amount of the loan to the money already disbursed -- $250,000.00. See, Exhibit G attached to SBA Memorandum. Upon cancelling the remainder of the loan, however, the SBA did not reduce the amount of the monthly payments from the amount that had been calculated on the basis of the full, previously approved loan amount. Some time thereafter, the loan went into default and, on August 31, 2002, the SBA sold the loan to LPP who, as assignee of the SBA, subsequently brought the instant action to collect on the loan.

In their Answer, the Third-Party Plaintiffs joined the SBA as a Third-Party Defendant, and alleged that misrepresentations, by the SBA, caused them to suffer damages. Additionally, when read

---

[3](...continued)
amount of $28,595.19 - #94-C-00191.

22. A Judgment against David L. Norman dba K[RAD], Inc. in favor of the State of North Dakota by Worker's Compensation Bureau, dated and docketed 10/1/90 in the amount of $1,324.92 - Haas - County Court.

Exhibit F attached to SBA Memorandum.

indulgently, the Third-Party Complaint further alleges that the SBA breached the note, and mortgage, when it ceased disbursement of the loan, and when it did not, thereafter, adjust the monthly payment amount.[4] In lieu of an Answer, the SBA filed its Motion to Dismiss, or for Summary Judgment, in which it argues that we should dismiss the Third-Party Plaintiffs' claims for lack of subject matter jurisdiction, under Rule 12(b)(1), Federal Rules of Civil Procedure. In support of that argument, the SBA asserts, first, that the Third-Party Plaintiffs have failed to assert a viable third-party claim under Rule 14, Federal Rules of Civil Procedure. Further, the SBA contends that the Third-Party Complaint sounds in tort, but that, since the SBA is a Federal Agency, it enjoys immunity from such actions under the Federal Tort Claims Act. Finally, the SBA argues that, even if the Third-Party Complaint could be

---

[4]In pertinent part, the Third-Party Complaint reads as follows:

> That the failure and refusal of SBA to tender the remaining principal to KRAD, Inc. over and above the initial $250,000 cause [sic] KRAD, Inc. Patricia A. Norman and David L. Norman, financial damage in excess of $75,000 based upon missed contractual and purchasing opportunities and based upon increased financing charges to recover the lost capital. The amount of the actual damages shall be proven at the time of the trial in this matter.

Third-Party Complaint, at ¶XV.

construed as a claim in contract, rather than in tort, the claim would nevertheless fail as a matter of law.

While the Motion to Dismiss was pending argument, the Third-Party Plaintiff filed an Amended Third-Party Complaint, in which a breach of contract action is plainly alleged and, at least by our reading, the prior claims, as alleged in the original Third-Party Complaint, which sounded in tort, have been abandoned. See, e.g., Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002)(holding that filing of a Motion to Amend, when an amended pleading could be filed out of course because the defendant had not answered the original pleading, rendered the pending Motion to Dismiss moot, and District Court erred in denying the Motion to Amend), citing Standard Chlorine of Delaware, Inc. v. Sinbaldi, 821 F. Supp. 232, 239-40 (D. Del. 1992), as "holding that the plaintiff's filing of an amended complaint rendered the defendants' motion to dismiss the original complaint moot."

In their Amended Third-Party Complaint, the Third-Party Plaintiffs have alleged the following breach of contract claim:

XI.

> The SBA, under the authority granted to it in the note attached hereto as exhibit "A", unilaterally decided not to disburse the balance of the $446,400 disaster loan to KRAD, Inc. beyond the initial $250,000 issued previously.

XII.

Even though to [sic] SBA only disbursed the $250,095 of the original disaster loan to KRAD, Inc. it failed to adjust the monthly repayment from $2174. $2,174 was the monthly payment based upon a 4% loan with a principle [sic] of $446,400. Upon information and belief, KRAD, Inc. was charged interest by SBA based upon a $446,400 disbursment [sic].

XIII.

That the actions of the SBA relating to the note, mortgage and security documents attached hereto constitute a breach of the note and mortgage.

XIV.

That KRAD, Inc. attempted to reinstate the balance of the SBA disaster loan in 1998 after providing proof that the non-disclosed taxes, liens and/or judgments no longer created a repayment problem. The SBA unreasonable [sic] and unfairly demanded that KRAD, Inc. brings [sic] its disaster loan payments current based upon the monthly payment of $2,174.

XV.

That the actions of the SBA caused KRAD, Inc. to default on the terms of the note and mortgage now held by the Plaintiff in the underlying lawsuit herein.

XVI.

That KRAD, Inc., Patricia A. Norman and David L. Norman, have been damaged financially by the actions of the SBA relating to the handling of the KRAD, Inc. disaster loan of 1997.

XVII.

> Because of the actions of the SBA in handling the KRAD, Inc. disaster loan of 1997, KRAD, Inc., Patricia A. Norman and David L. Norman are each entitled to contribution up to $10,000[5] by the SBA for any attorneys fees, interest and/or general damages awarded to the Plaintiff in the main lawsuit herein.

Amended Third-Party Complaint, at ¶¶XI through XVII.

Notwithstanding these breach of contract allegations, the SBA continues to contend that, even as altered and clarified, the Amended Third-Party Complaint fails to state a viable claim against it, in contract, and the claims should be dismissed as outside of this Court's subject matter jurisdiction.[6]

---

[5]The limitation of damages to $10,000 per Third-Party Plaintiff appears to be a recognition of the jurisdictional limit prescribed by Title 28 U.S.C. §1346(a)(2)("The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims of: * * * (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States * * *.").

[6]The SBA argues that, because the Third-Party Plaintiffs opposed its Motion to Dismiss, they "may no longer amend their Third-Party Complaint as of right," citing Moldea v. New York Times Co., 793 F. Supp. 338 (D.D.C. 1992). While, as SBA argues, Moldea does state that "it is settled that where a defendant has filed a dispositive motion, as here, and plaintiff has opposed it, denial of permission to amend is proper," id. at 338, the Trial Court's denial of the Motion to Amend was affirmed on "futility" grounds, and not on the basis of its procedural timing. Compare, Moldea v. New York Times Co., 15 F.3d 1137, 1140 n. 3 (D.C. Cir. 1994), opinion modified by Moldea v. New York Times Co., 22 F.3d 310, 319-20 (D.C. Cir. 1994), cert. denied, 513 U.S. 875 (1994). As the (continued...)

III. Discussion

The SBA's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Of necessity, we examine the jurisdictional issue at the outset for, if we are without jurisdiction over the subject matter of the Amended Third-Party Complaint, then we are not empowered to consider those claims as a matter of law.

A. Standard of Review. A party may challenge a Court's subject matter jurisdiction over a controversy at any time, under Rule

---

[6](...continued)
Court of Appeals for the District of Columbia has subsequently explained:

> The Federal Rules of Civil Procedure guarantee a plaintiff an absolute right to amend its complaint once at any time before the defendant has filed a responsive pleading. * * * In this case, the USDA filed no answer, but only a motion to dismiss. We have repeatedly clarified that a motion to dismiss is not a responsive pleading for the purposes of Rule 15. * * * Because [the plaintiff] therefore was entitled as a matter of right to amend its complaint, it was error for the District Court to refuse to consider its added claims.

James V. Hurson Associates, Inc. v. Glickman, 229 F.3d 277, 282-83 (D.C. Cir. 2000)[citations omitted].

The law of this Circuit is no different. See, Winfrey v. Brewer, 570 F.2d 761, 764 n. 4 (8th Cir. 1978)("Fed.R.Civ.P. 15(a) provides that '(a) party may amend his pleading once as a matter of course at any time before a responsive pleading is served,'" and "[a] motion to dismiss is not a 'responsive pleading' for purposes of this rule."). The Amended Third-Party Complaint was filed on May 20, 2002, and was transmitted to the SBA, by mail, on May 13, 2002.

12(b)(1), Federal Rules of Civil Procedure, since a defense, on subject matter jurisdiction grounds, may not be waived. See, Moubry v. Independent School District No. 696, 951 F. Supp. 867 (D. Minn. 1996), citing Northwest Airlines Inc. v. Transportation Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[; it] may be raised at any time by a party to an action, or by the court sua sponte."). "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments." Moubry v. Independent School Dist. No. 696, supra at 882, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." Carlson Holdings, Inc. v. Nafco Ins. Co., Ltd., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n.6. Accordingly, "[t]he court presumes that all of the factual allegations in the

complaint concerning jurisdiction are true and will not dismiss the claim unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Id. However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id. In such a circumstance, the Court need not presume the truth of the allegations in the Complaint, and the plaintiff "will have the burden of proof that jurisdiction does in fact exist." Id.; citing Osborn v. United States, at 730.

B. Legal Analysis. The SBA has raised two distinct arguments in support of its Motion to Dismiss, and we address each argument in turn.

1. Alleged Failure to Allege a Viable Third-Party Claim.

The SBA contends that the Third-Party Plaintiffs have failed to state a viable claim against it, under Rule 14(a), Federal Rules of Civil Procedure, and that, as such, we lack the

requisite subject matter jurisdiction to consider that claim further.[7]

a. Standard of Review. The governing law makes clear that Rule 14(a) should be liberally construed in favor of impleading a third-party, since its purpose is to avoid a circuity of actions, and a multi-plicity of suits. See, United of Omaha Life Ins. Co. v. Reed, 649 F. Supp. 837 (D. Kan. 1986); Dixon v. Northwestern National Bank, 275 F. Supp. 582 (D. Minn. 1967).

Such a construction permits all related claims to be disposed of in one action, and thereby simplifies, and expedites, the litigation process. Id.; see also, Waylander-Peterson Co. v. Great Northern Ry. Co., 201 F.2d 408 (8th Cir. 1953); Blais Construction Co., Inc. v. Hanover Square Associates - I, 733 F. Supp. 149, 152 (N.D.N.Y. 1990); Patten v. Knutzen, 646 F. Supp. 427 (D. Colo. 1986). However, in order for proper impleading to occur, the third-party plaintiff must implead a person against whom it can assert a claim of joint or secondary liability, that arises out of

---

[7]Rule 14(a) provides, in pertinent part, as follows:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

the plaintiff's claim against the third-party plaintiff. See, Erickson v. Erickson, 849 F. Supp. 453, 456 (S.D. W.Va. 1994); Greene Line Mfg. Corp. v. Fibreboard Corp., 130 F.R.D. 397, 399 (N.D. Ind. 1990).

As the Court explained, in Price v. CTB, Inc., 168 F. Supp.2d 1299, 1301 (M.D. Ala. 2001):

> Under Rule 14(a), a defendant may assert a claim against anyone not a party to the original action if that third party's liability is in some way dependent upon the outcome of the original action. Davenport v. Neely, 7 F. Supp.2d 1219, 1223 (M.D. Ala. 1998). There is some limitation on this general statement, however. Even though it may arise out of the same general set of facts as the main claim, a third party claim will not be permitted when it is based upon a separate and independent claim. United States v. Joe Grasso & Son, Inc., 380 F.2d 749, 751 (5th Cir. 1967). Rather, the third party liability must in some way be derivative of the original claim; a third party may be impleaded only when the original defendant is trying to pass all or part of the liability onto that third party. Allstate Ins. Co. v. Hugh Cole Builder, Inc., 187 F.R.D. 671, 673 (M.D. Ala. 1999).

As explained by a leading treatise on Federal practice:

> [T]he test for joinder of a Third Party under the impleader rule is not transactional. Thus, it differs from the standards for compulsory counterclaims and cross-claims, which are appropriate only if they arise from the same "transaction or occurrence" as the underlying suit. Impleader, in contrast, is narrower. It must involve an attempt to pass on to the Third Party all or part of the liability asserted against the defendant. Thus, it

> must be an assertion of the third-party defendant's **derivative** liability to the third-party plaintiff. An impleader claim cannot be used to assert any and all rights to recovery arising from the same transaction or occurrence as the underlying action.

3 Moore's Federal Practice, ¶14.04(3)(a)(3rd ed. 1999)[emphasis in original]; see also, Allstate Ins. Co. v. Hugh Cole Builder, Inc., 187 F.R.D. 671, 673-74 (M.D. Ala. 1999), citing City of Orange Beach v. Scottsdale Ins. Co., 166 F.R.D. 506, 511 (S.D. Ala. 1996), aff'd, 113 F.3d 1251 (11th Cir. 1997).

Simply put, "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir. 1987); see also, Lincoln Gateway Realty Co. v. Carri-Craft, Inc., 53 F.R.D. 303, 306 (W.D. Mo. 1971).

b. Legal Analysis. The SBA contends that, under Rule 14(a), the Third-Party Plaintiffs have failed to assert that the SBA's liability, as alleged in the Amended Third-Party Complaint, would be dependent on the outcome of the main claim brought by LPP, or that the SBA would be secondarily liable to the Third-Party Plaintiffs for claims asserted by LPP. As a result, the SBA contends that the Third-Party Plaintiffs have failed to state a viable claim under Rule 14(a). Not surprisingly, the Third-Party Plaintiffs disagree. They note that their Amended Complaint against the SBA is premised on the assertion that the SBA's decision to disburse less then the full amount of the

disaster loan, and then to keep the monthly payment at the amount determined for the entire loan, as well as its demand, that KRAD bring the payments up to date at that level before it would consider reinstatement of the full loan amount, created such a financial hardship on KRAD, that KRAD was caused to default on the loan. The Third-Party Plaintiffs contend that, if LPP is ultimately successful in its claims against them, and if the SBA is found to have breached the note and mortgage, then the SBA might be liable to them for any damages they owe LPP, up to $10,000 per Third-Party Plaintiff. Accordingly, the Third-Party Plaintiffs contend that they have stated a viable claim under Rule 14(a).

If the SBA had not assigned this loan, but instead, was the Plaintiff in this action, there would be little doubt that KRAD could assert its claims against the SBA in the form of Counterclaims. See, Rule 13(a), Federal Rules of Civil Procedure. However, that is not the procedural posture of this case. Rather, we face the question of whether, having assigned the loan to LPP, the SBA's liability, to the Third-Party Plaintiffs, if any there be, is derivative of LPP's claims against them. We find that they are not.

At the outset, the unambiguous terms of the Loan Sale Agreement ("Sale Agreement"), and the Assignment and Assumption Agreement ("Assumption Agreement"), which were entered between LPP and

the SBA in consummating the sale of KRAD's loan to LPP, make clear that the SBA would not be liable to LPP for any act performed by the SBA that would render unenforceable the loan purchased by LPP. The Waiver and Release section of the Sale Agreement -- Article Twenty -- provides as follows:

> [LPP], * * * hereby disclaim[s] and waive[s] any right or cause of action they might now or in the future have against [the SBA] * * * as a result of the purchase of the Loans; provided, however, that this wavier and release will not extend to any liability of [the SBA] arising from [the SBA's] failure to perform its obligations in accordance with the terms of this Agreement. In addition, [LPP] * * * hereby release[s] [the SBA] * * * from any and all Claims arising from or related to the Loans, the Collateral or the Loan Documents, or arising out of the violation of any applicable laws (including, without limitation, state and federal securities laws and/or Environmental Laws).

Exhibit A to Supplemental Memorandum of Law in Support of Third-Party Defendant Small Business Administration's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Sale Agreement") at 41, Section 20.1.

This provision prevents LPP from asserting any claim against the SBA that LPP held at the time of the purchase of KRAD's loan, or which arose at some point thereafter, unless that claim arose from the SBA's failure to perform in accordance with the terms of the Agreement. Accordingly, LPP would be precluded from bringing a third-party claim against the SBA in this case -- alleging as the Third-Party Plaintiffs do, that the SBA breached its loan agreement

with KRAD -- as LPP waived any right to commence such an action.[8] As a result, and as confirmed by the absence of any direct claim by LPP against the SBA, this is not a circumstance in which KRAD and the SBA may be jointly and severally liable to LPP.

Nor is this a circumstance where the absence of the SBA would deprive the Third-Party Plaintiffs of a defense they would otherwise have to the collectability of their debt to LPP. Under the Sale Agreement, LPP assumed all of the SBA's obligations and responsibilities as the holder of the KRAD loan after the closing date of the loan sale. Sale Agreement, at p. 23, Section 6.2(E).

---

[8]The SBA notes that there is one possible exception to that waiver, which arises out of one of the limited warranties that the SBA extended in the Sale Agreement, where the SBA warranted that, as of July 7, 2000, "no further disbursements were required to be made under any Loan." See, Sale Agreement, at p. 29, Section 8.2 (C). LPP might argue, for reasons advanced by the Third-Party Plaintiffs, that the SBA wrongfully withheld disbursement of the remainder of the KRAD loan, thus breaching that Warranty, by failing to perform its obligations under the terms of the Sale Agreement. Under such a theory, LPP might be able to state a claim against the SBA as to the KRAD loan, notwithstanding the Waiver and Release provisions. However, by the express terms of the Sale Agreement, LPP's sole remedy, for a breach of that Warranty, was to deliver a Breach Notice to the SBA. Sale Agreement, at p. 30, Section 8.5(A)-(B). Under the only applicable alternative, such a Breach Notice would have had to be delivered before the expiration of the Warranty Period, which was defined as "[t]he period commencing on the Closing Date and ending at 5:00 p.m. on the date one hundred and eighty (180) calendar days following the Closing Date." Id., at 12. As the Closing Date was August 31, 2000, the Warranty Period has long ago expired and, as this was LPP's sole remedy, any claim that LPP might have had against the SBA for a breach of that Warranty has also expired.

As a result, there can be no legitimate complaint that the SBA reaped the benefit of its loan, and then avoided its own responsibilities and obligations, attendant to that loan, for those obligations are borne by LPP. As well as providing for the release of LPP's claims against the SBA, Article 20 also releases the SBA from all liability, including from future claims, which arise from the loans, even if such liability arises from actions taken by the SBA prior to the loan sale, and regardless of the claimant. We find support for this assertion in Section 20.1.

In the first part of that Section, which releases the SBA from all liability to LPP for claims arising out of the loan sale, the language expressly provides that LPP is waiving, and releasing, any claim that LPP had against the SBA. However, the second part of that Section provides that LPP releases the SBA from Claims "arising from or related to the Loans," without reference to the identity of the claim holder.[9] Id. Thus, by this provision, LPP has released the SBA from any claim, by any person, under any applicable law, "arising from or related to the Loans, the Collateral, or the Loan Documents." Id. Indeed, in their Supplemental Memo-

---

[9]The Sale Agreement defines "Claim" as "[a]ny claim, demand, cause of action, judgment, loss, damage, liability, cost and expense (including attorneys' fees, whether suit is instituted or not), whether known or unknown, liquidated or contingent." Sale Agreement, at 5.

randum, the Third-Party Plaintiffs argue that they have a viable Counterclaim against LPP, although, at least to this date, they have failed to assert one. Memorandum of Third Party Plaintiffs Concerning Loan Assignments, at p. 5.

The Third-Party Plaintiffs contend, however, that even if an argument could be made that LPP has agreed to accept all responsibility for the loan, there is no specific language in the Sale Agreement which precludes a third-party litigant from suing the SBA on the loan.[10] Instead, they contend that, "[a]t most, [LPP] is agreeing to be responsible for any and all costs or damages incurred by [the] SBA if there is litigation," or is "waiving any right to hold [the] SBA liable for any of its actions in servicing the loan." Memorandum of Third Party Plaintiffs Concerning Loan Assignments, at 4. We need not agree or disagree with this proposition, however, because it is tangential to the right of the Third-Party Plaintiffs to implead the SBA.

In the main action, LPP's claim is that KRAD failed to pay on its loan, and LPP is entitled to those payments. If LPP prevails on that claim, the SBA has no joint liability to KRAD. To avoid

---

[10]In the Sale Agreement, Section Seven, which is entitled "Litigation; Fees," does provide that LPP will step in as the party-in-suit as to any litigation which was pending at the time of the sale. It does not, however, provide the same for litigation which is started after the sale, but which arose from acts before the sale.

that inexorable result, the Third-Party Plaintiffs urge that their default on the loans, which are now held by LPP, was due to the SBA's reduction in the loan amount, and its acceleration of the loan payments due. Notably, the Third-Party Plaintiffs concede, in their amended pleading, that the SBA had legal authority to undertake those contractual remedies. See, Amended Third-Party Complaint, at ¶XI; see also, Exhibit A to Amended Third-Party Complaint, at p. 1.[11] In truth, the Third-Party Plaintiffs contend that they were unable to honor the notes and obligations they signed, which are now owed to LPP, because of insufficient funds

---

[11]As pertinent, Exhibit A provides as follows:

> Holder is authorized to declare all or any part of the indebtedness immediately due and payable upon the happening of any of the following events: * * * (3) Holder's discovery of the undersigned's failure in any application of the undersigned to Holder or SBA to disclose any fact deemed by the Holder to be material or the making therein or in any of said agreements, or in any affidavit or other documents submitted in connection with said application or the indebtedness, of any misrepresentation by, on behalf of, or for the benefit of the undersigned; * * *.

We understand the Third-Party Plaintiffs to argue that, notwithstanding this plain language, whether their failure to disclose information was "material," is a Jury issue. We doubt that the contractual vesting of the materiality of an omission into the hands of the other contracting party, is necessarily a Jury issue, but we need not resolve that issue, here, as it too is tangential to the Rule 14(a) question.

attributable to the SBA's acts of reducing the loan amount, and of accelerating the loan payments. Whether the Third-Party Defendants are liable to LPP is dependent upon the legal documents they executed, and not on whether they received as much, in loan proceeds, as they had hoped.

In this respect, the claims of the Third-Party Plaintiffs are not to be distinguished from claims that they may hold against other lenders, who chose to extend less credit to them than they would have preferred. Surely, such non-party lenders could not be impleaded in this action, under Rule 14(a). In Republic Nat'l Bank v. Hales, 75 F. Supp.2d 300 (S.D.N.Y. 1999), aff'd sub nom., HSBC Bank USA v. Hales, 4 Fed.Appx. 15, 2001 WL 99830 (2nd Cir., February 6, 2001), a bank sought to recover amounts that the borrower owed on a promissory note. The borrower attempted to implead a corporation which had provided him with consulting and financial advisory services, with respect to securing the promissory note. The Court rejected the borrower's attempt at impleader, under Rule 14(a), as "inappropriate," and reasoned that those claims were not "covered by Rule 14, which allows a third-party complaint to be served upon a non-party 'who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claims against the third-party plaintiff, but rather [were] parallel claims for fraud, breach of fiduciary duty, and the like that are not at all depen-

dent upon [the plaintiff's] ultimate liability to [the lender]." Id. at 310 n. 8.

Likewise, in United States v. Olavarrieta, supra at 643, the United States sued the defendant in order to recover on defaulted student loans, and the defendant sought to implead, under Rule 14(a), the Regents of the University to which the loan proceeds were paid for failing to award him a Juris Doctor degree as promised. According to the defendant, the Board of Regents should be held to indemnify him for any sums he could be found to owe the Government. The Court denied the impleader, and reasoned as follows:

> [T]o the extent the third party complaint seeks relief on account of the University's failure to award [the defendant] a J.D. degree as promised, it does not set forth proper grounds for a third party claim under Fed.R. Civ.P. 14(a). Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim. Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim. * * * [The defendant's] third party claim alleging breach of contract or fraud on account of the University of Florida's failure to award him a J.D. degree as promised is a separate and independent action against him. Whether [the defendant] is entitled to any relief on this claim is wholly independent of

> his liability to the government for defaulting on his student loans.

Id. at 643.

We appreciate that there are distinctions that can be drawn between these decisions, and the facts presented here, but the distinctions are of degree, and not of kind. Whether the Third-Party Plaintiffs could ever secure a recovery from the SBA has nothing, whatsoever, to do with their potential liability to LPP, at least as to the grounds plead in their Amended Third-Party Complaint. As a consequence, we grant the SBA's Motion to Dismiss.[12]

---

[12] In their original Complaint, the Third-Party Plaintiffs had asserted tort claims against the SBA, which have been abandoned in their Amended Third-Party Complaint as a result of their acknowledgement "that the allegations under their original Third Party Complaint sound in tort and, therefore, cannot be brought against the SBA under any provision of the Federal Tort Claim Act." Third Party Plaintiffs' Memorandum of Law in Opposition, at p. 13. They go on to expressly represent that the "new claims against the SBA contained in the Amended Third Party Complaint are based upon a claim of breach of contract." Id. at 15. Accordingly, we have no occasion to address the tort claims which have now been disowned.

To the extent that the Third-Party Plaintiffs are implicitly, or impliedly seeking to amend their Answer so as to assert a Counterclaim against LPP, we decline to address that issue without a formal Motion placing LPP on notice of any intent to serve and file a Counterclaim.

Lastly, we state the obvious. We do not award Summary Judgment to the SBA, nor do we direct the entry of Judgment on the SBA's Motion to Dismiss. On the Record submitted, we do not rule upon the merits of the Third-Party Plaintiffs' breach of contract claim against the SBA, we merely hold that the action by LPP against the Third-Party Plaintiffs is an inappropriate vehicle, under Rule 14(a), Federal Rules of Civil Procedure, upon which to

(continued...)

NOW, THEREFORE, It is --

ORDERED:

That the Third-Party Defendants' Motion to Dismiss [Docket No. 34] is GRANTED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

[12](...continued)
append the breach of contract claims contained in the Amended Third-Party Complaint. Accordingly, our dismissal is without prejudice.